UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LUCINDA A. MOHLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-01550-TWP-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on
## Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C.

§ 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its

appropriate disposition. As addressed below, the Magistrate Judge recommends

that the District Judge REVERSE AND REMAND for further proceedings the

decision of the Commissioner of the Social Security Administration that plaintiff

Lucinda A. Mohler is not disabled.

## Introduction

Ms. Mohler applied in November 2011 for Supplemental Security Income

disability benefits (SSI) under Title XVI of the Social Security Act, alleging that she

has been disabled since April 29, 1988.  Acting for the Commissioner of the Social

Security Administration following a hearing held by videoconference on February

13, 2013, administrative law judge James G. Myles issued a decision on February

21, 2013, finding that Ms. Mohler is not disabled.  The Appeals Council denied

review of the ALJ's decision on May 28, 2014, rendering the ALJ's decision for the Commissioner final.  Ms. Mohler timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Mohler contends the Commissioner's decision must be reversed and remanded because the ALJ (1) erroneously failed to find she is presumptively disabled under listing 12.05C and (2) failed to give appropriate weight to an opinion rendered by a psychologist, Robin E. Young, Psy.D.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Mohler's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Ms. Mohler is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

4

## Analysis

### I.     The ALJ's Sequential Findings

Ms. Mohler was born in 1988, was 23 years old when she filed her application for disability benefits, and was 24 years old at the time the ALJ issued his decision.

Because Ms. Mohler's assertions of error relate only to the ALJ's evaluation of her mental impairments, the court limits its discussion to those matters and does not address the ALJ's analysis of physical impairments or their effects on Ms. Mohler's functioning.

At step one, the ALJ found that Ms. Mohler had not engaged in substantial gainful activity since her application date.[1] At step two, the ALJ determined Ms. Mohler suffered from severe impairments of organic mental disorder, affective disorder, and personality disorder.  He concluded that none met or medically equaled a listed impairment.  The ALJ next determined her residual functional capacity, i.e., her maximum work capacity despite her impairments and their effect on her functioning.  He determined Ms. Mohler is capable of performing jobs that accommodate the following limitations:  (a) only routine, unskilled work; (b) work requiring only occasional interpersonal contact, and no working in teams or with the public, (c) no high output production or piecemeal quota demands, and (d) work allowing her to be off task up to 5 minutes per hour and allowing her to be absent one day per month.  (R. 21).

---

[1]      Under the SSI program, a claimant who is found disabled cannot receive benefits for any period before the date of her application for benefits, regardless if her onset of disability was before her application date.  *See* 20 C.F.R. § 416.335.

Ms. Mohler had no past relevant work to assess at step four.  At step five, and based on the opinion of a vocational expert, the ALJ decided Ms. Mohler is capable of performing the following jobs that exist in significant numbers in the relevant economy:  janitor, groundskeeper, and automobile detailer.  Accordingly, the ALJ concluded Ms. Mohler is not disabled.

## II.   Ms. Mohler's Assertions of Error

Ms. Mohler argues the ALJ erred by (a) failing to find she is presumptively disabled under listing 12.05C and (b) failing to accord appropriate weight to a medical opinion by psychologist Robin Young.  The court first addresses her contention the ALJ erred at step three.

### A.  The ALJ failed to evaluate listing 12.05C appropriately.

#### 1.  Listing 12.05 has three requirements.

Listing 12.05C, which had used the term "mental retardation" but now instead uses the term "intellectual disability,"[2] describes a severity of intellectual disability that is presumptively disabling, so that if a claimant meets all of the requirements of the listing, she is entitled to benefits without regard to any analysis under steps four or five, including the formulation of a residual functional capacity. *See Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002) (when claimant meets all the criteria for a listed impairment, the claimant is presumptively disabled and

---

[2]      Effective September 3, 2013 (but before the ALJ issued his decision), the SSA replaced the term "mental retardation" in listing 12.05 with the term "intellectual disability."  The substantive requirements of listing 12.05 were not changed.  *See* https://www.federalregister.gov/articles/2013/08/01/2013-18552/change-in-terminology-mental-retardation-to-intellectual-disaiblity.

qualifies for benefits); *King v. Barnhart,* 2007 WL 968746 at *4 (S.D. Ind. Feb. 26, 2007) (12.05C's standards are designed to address the situation where a combination of low mental ability and another significant mental or physical impairment impede ability to work; "Its standards are designed to identify cases in which more detailed, individualized consideration of a claimant's situation is not justified.")

Listing 12.05C states (using the terminology in effect at the time of the ALJ's decision):

> 12.05 *Mental retardation.* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied . . .
>
> C   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

As shown, listing 12.05C has three separate requirements:  (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22: (2) a valid IQ score of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

There is no dispute the ALJ's decision reflects that Ms. Mohler meets requirement (3)—the existence of another mental impairment imposing an additional and significant work-related limitation of function. He determined,

among other things, that Ms. Mohler's mental impairments, including affective disorder and personality disorder, permitted her to have only "occasional interpersonal contact" in the workplace and restricted her from working in teams or working with the public. (R. 21).

The issues are, thus, whether Ms. Mohler has a valid IQ score of 60 to 70 and whether she has deficits in adaptive functioning initially manifested before age 22. On the first issue, the Commissioner's arguments reflect a misreading of the record and urge a basis for affirmance inconsistent with the ALJ's findings. On the second issue, the Commissioner's arguments cannot save the ALJ's cursory analysis and his omission of important evidence that undermine his conclusion.

### 2. The Commissioner cannot maintain that Ms. Mohler's IQ score is invalid.

In March 2002, Dr. Paul Roberts, a neuropsychologist, conducted a mental status examination and administered the Wechsler Adult Intelligence Scale-IV in connection with Ms. Mohler's application for disability benefits. Ms. Mohler's full scale IQ score was 65. (R. 324). Dr. Roberts stated that "[i]f consideration is given to the standard error of measurement (SEM) in combination with [Ms. Mohler's score in the verbal comprehension index [VCI] of the testing], it is believed this individual is not mentally handicapped but rather is functioning in the Borderline range." (*Id*.) His diagnoses included "Mild Mental Handicap (FSIQ [full scale IQ] =65) – Provisional" and "consider" "Borderline Intellectual Functioning (if consideration is given to SEM/VCI)." (R. 325). Dr. Roberts also opined "within a reasonable degree of neuropsychological/medical certainty that [Ms. Mohler]

8

provided a demonstration of her best possible effort" and the IQ score is valid and accurate. (R. 324).

The ALJ's decision reflects his acceptance of the 65 full-scale IQ score as valid. His decision states he rejects the argument Ms. Mohler's counsel made at the hearing that Ms. Mohler is disabled under listing 12.05C for the reason "the claimant has no qualifying deficits in her adaptive functioning." The ALJ did not suggest an invalid IQ score. In fact, the ALJ stated he "acknowledges" "the claimant has a relatively low IQ score. (R. 20).

In response to Ms. Mohler's contention that the evidence reflects a valid IQ score within 12.05C's range, the Commissioner emphasizes that the listing requires a "*valid*" IQ score (Dkt. 19 at p. 10, italics emphasis by the Commissioner) and cites a decision by the Seventh Circuit upholding an ALJ's conclusion that a claimant's score was invalid. (Dkt. 19 at p. 10, citing *Maggard v. Apfel,* 167 F.3d 376 (7th Cir. 1999)). In *Maggard,* the court stated that "the ALJ included a discussion of his reasons for concluding that Maggard's IQ score was invalid [and] [o]ur review of the record reveals that substantial evidence supports the ALJ's determination that Maggard's verbal IQ score was invalid." *Id.* at 380. Here, the ALJ did not find the IQ score was invalid.

Moreover, the evidence (at least the evidence reflected in the ALJ's decision) might not even permit a conclusion Ms. Mohler's score was invalid. The Commissioner suggests the score could be found invalid because Dr. Roberts did not "diagnos[e] mental retardation" and diagnosed borderline intellectual

9

functioning instead.  But that is a stilted—and unfair—reading of Dr. Roberts's report.  At Axis II,[3] he provided a provisional *diagnosis* of "Mild Mental Handicap" because of Ms. Mohler's IQ score of 65 and stated one could "consider" a diagnosis of borderline intellectual functioning "if" consideration is given to the standard error of measurement and the verbal comprehension index.  (R. 325).

The Commissioner's attempt to bolster the ALJ's decision 12.05C was not met because of the possible invalidity of Ms. Mohler's IQ score violates the *Chenery* doctrine, which forbids the court from evaluating an ALJ's decision based on post-hoc justifications from the Commissioner not reflected in the ALJ's decision.  *See SEC v. Chenery Corp.,* 318 U.S. 80, 87-88 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")

### 3.  The ALJ's determination regarding Ms. Mohler's adaptive functioning fails to address contrary evidence.

The ALJ rejected the applicability of listing 12.05C on the ground "the record shows that the claimant has no qualifying deficits in her adaptive functioning."  (R. 20).  He supported this conclusion with the following remarks:

> The claimant testified that she drives, she has a child that she cares for, has worked in the past, is able to use money and she can read and write.  Additionally, she presented at the hearing as intelligent and responsive.  While I do acknowledge the claimant has a relatively low IQ score and has never lived independently, there is little evidence in the record to suggest that she could not live alone.  Rather, the

---

[3]      Axis II is part of the Diagnostic and Statistical Manual's "multiaxial system" for assessing a person's mental health.  Axis II is used to classify "personality disorders and intellectual disabilities."  *See* http://www.psyweb.com/DSM_IV/jsp/Axis_II.jsp

> evidence shows that the claimant lived with her mother until she got married at a relatively young age, and then began living with her husband. Interestingly enough, the record provides that the claimant may have in fact been the primary caretaker of the couple's daughter, as the claimant reported in August 2011 that her husband was, at that time, in and out of the home.

R. 20.

As Ms. Mohler points out, the ALJ's analysis overstates the evidence of her functioning and does not consider other important evidence in the record that detracts from his findings. For example, although Ms. Mohler has a driver's license and can drive, she also testified she is fearful to drive alone because she frequently gets lost. (R. 40). Her work experience is also extraordinary limited. The earnings record shows she made less than $150 in 2004 and less than $500 in 2008 (R. 171), and Ms. Mohler testified she was fired from her last job because she had difficulty figuring out her tasks and became frustrated. (R. 39, 45). Her child-care responsibilities, according to Mr. Mohler, are substantially assisted by her husband and mother, and she testified to her doubts she could get her daughter ready for school if her husband or mother did not help. (R. 44). Finally, although the ALJ emphasized Ms. Mohler's "ability to use money," Dr. Roberts opined that based on his mental status examination of Ms. Mohler and the IQ test results, "it is believed [Ms. Mohler] is *not* capable of managing her own financial affairs independently and without supervision." (R. 324, emphasis by Dr. Roberts).

In addition, the ALJ did not address important evidence relevant to Ms. Mohler's adaptive functioning before age 22. The administrative record indicates Mr. Mohler "was in a class for the learning disordered from the 2nd until the 10th

grades." (R. 321). The record also contains detailed information from school case conference reports. (*See* R. 213-238).

Based on these examples, the court agrees with Ms. Mohler that the ALJ's decision reflects a failure to address evidence that would undermine the conclusions he made about Ms. Mohler's deficits in adaptive functioning. *See Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012) (In connecting the evidence to a conclusion, an ALJ "may not ignore entire lines of contrary evidence.")

The Seventh Circuit explained in *Novy v. Astrue,* 497 F.3d 708, 710, that the term "deficits in adaptive functioning" "denotes inability to cope with the challenges of ordinary everyday life." That definition requires the ALJ to make a qualitative, not quantitative assessment. A claimant need not display *no* adaptive functioning to meet the listing, but evidence that the claimant has *some* challenge or challenges is not conclusive either. As the court has stressed, it is necessary for the ALJ to provide a fair evaluation of the evidence—pro and con—in making his qualitative assessment.

The court is convinced in this case that the ALJ's assessment of Ms. Mohler's adaptive functioning for purposes of his 12.05C analysis did not appropriately consider a fair sampling of the evidence of Ms. Mohler's inabilities to cope with the challenges of everyday life. The comments by then-District Judge Hamilton in a similar case are apt here. In *Hendricks v. Astrue,* 2009 WL 648610 (S.D. Ind. March 11, 2009), Judge Hamilton found that the ALJ had not considered all the pertinent evidence and in remanding, he stated that the "evidence, if fully considered, may

12

not be enough to satisfy Listing 12.05.  Still, an ALJ must 'sufficiently articulate his assessment of the evidence to assure us that he considered the important evidence.'" *Id.* at \*7 (quoting *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999)).

Based on the foregoing, the court determines that the ALJ's decision that listing 12.05C was not met or medically equaled is not supported by substantial evidence.

### B. The ALJ's evaluation of Dr. Young's opinion is supported by substantial evidence.

Because the court determines the Commissioner's decision should be reversed and remanded because the ALJ's step three decision is not supported by substantial evidence, the court need not decide whether the ALJ's evaluation of Dr. Young's opinion about Ms. Mohler's residual functional capacity is supported by substantial evidence.  However, because this issue may arise on remand, the court provides some guidance.  First, the court agrees with the Commissioner that the record does not indicate Dr. Young was a "treating" source.  Rather, Dr. Young apparently met with Ms. Mohler only twice, once in June 2011 when he completed an initial "intake" report (R. 285-92) and again in February 2012 when Ms. Mohler "arrived with her mother" to complete a disability assessment form.  (R. 353).  There are no other examination notes by Dr. Young.  Second, the ALJ's decision to give "no weight" to Dr. Young's opinion because the opinion is based on Ms. Mohler's self-reporting and not apparently from objective medical findings is supported by substantial evidence.  Dr. Young's opinion itself explains the supporting evidence is based on what Ms. Mohler "stated," or "reported," or "denied."  (*See* R. 426-28).

13

## <u>Conclusion</u>

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Ms. Mohler is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated:  February 4, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system